**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROGELIO ALERIANO, | ) | CASE NO. CV 06-02379 (RZ) |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| vs. | ) | AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Rogelio Aleriano sought disability benefits based largely on back, buttocks and left leg pain that persisted to some degree even after two surgeries. The Social Security Administration administratively denied the claim at step five of the familiar five-step analytical process. Plaintiff presents three arguments for reversing that denial. None is persuasive. The Court therefore will affirm.

## I.
## PLAINTIFF'S CREDIBILITY

Plaintiff asserts that the Administrative Law Judge improperly discounted his statements about his pain and other subjectively-reported symptoms. Pl.'s Mem. at 12-16. Generally, once a claimant has supplied objective medical evidence of a malady that "could reasonably be expected to produce" some degree of pain or other subjectively-reported

symptoms, the Administrative Law Judge may discount the claimant's testimony about the degree of pain, and how that pain affects the claimant's ability to work, only if the judge supplies specific, cogent reasons supported by substantial evidence in the record, *see Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991) (*en banc*); *Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996), sufficient to permit this Court to conclude that the Administrative Judge's disbelief was not arbitrary. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1994).

The Administrative Law Judge complied with these standards by stating three reasons, supported by substantial evidence, for finding Plaintiff's account of his subjective symptoms not fully credible. First, she pointed out that Plaintiff's surgeries have improved his condition more than his subjective complaints now suggest. "Indeed, his radiographs have shown good results from his surgery,"

> with only mild additional findings. He does not have any consistent motor or sensory deficits. His own treating physician had indicated he was capable of at least light work.

Administrative Record (AR) 27; *see* AR 381 (treating physician and surgeon Eric Sabety, M.D.'s notes of December 18, 2002 exam, including "subjective complaints") ("low back feels better"), 394 (April 3, 2002) ("I feel better [but left] leg aches") & 207 (similar report), 395 (March 13, 2002) ("I feel bottom numbness is gone"), 478 (January 1, 2003) (Plaintiff continues to report pain and tingling but "states that the pain . . . is substantially less now than before surgery"); 454 (Sabety's view, after second surgery, that Plaintiff can work, albeit with restrictions against heavy lifting and with postural, sitting and standing limitations).

Plaintiff replies that a "successful surgery" critique of his credibility is unsound because Plaintiff's pain continued after the first surgery, and he had to have a further surgery. *See* Reply Mem. at 5. But the record supports Defendant's interpretation

at least as much as it supports Plaintiff's, for at least two reasons.  First, one basis for the second surgery was the need for removal of the hardware installed during the first.  *See* AR 436 (listing only "removal of the metal and battery pack" as reason for admission for second surgery).  Second, Plaintiff's pain and other subjectively-reported symptoms decreased markedly (although they did not end) after the first and second surgeries.  The treating surgeon, Dr. Sabety, noted after the second operation that Plaintiff reported improvements after both procedures and felt "much better" after the latter, in June 2003.  AR 450.  Having examined Plaintiff many times and operated on him twice, Dr. Sabety did not believe that Plaintiff was incapable of working, as of three months after the second surgery.  On the contrary: the surgeon clearly if implicitly believed Plaintiff *could* work, albeit with restrictions rather similar to those ultimately adopted by the Administrative Law Judge:  "On the open labor market he should be precluded from heavy lifting, repetitive stooping and bending, prolonged standing and walking."  *Compare* AR 454 (Dr. Sabety's September 24, 2003 report) *with* AR 28 (RFC-related findings).  Finally, although Dr. Sabety believed that Plaintiff's symptoms (after the second surgery) could flare up from time to time, he noted that "[a]spirin, Aleve, Advil or other over the counter medication is reasonable" treatment for "attacks," *id*., in contrast to the stronger medications Plaintiff received in the immediate aftermath of his surgeries.  *See* AR 484 (Darvocet prescribed immediately after second surgery), 193 (Vicodin immediately after first surgery).  In sum, the first, successful-surgery basis asserted by the Administrative Law Judge for discounting Plaintiff's account of entirely disabling pain is sound and enjoys substantial evidentiary support, even if other interpretations of the record are possible.

Second, the opinion noted that although Plaintiff "asserted a chronic and debilitating pain syndrome of extended duration, . . . he exhibited no evidence of diffuse atrophy or muscle wasting, common indicators of chronic pain."  AR 27.  The opinion does not cite any particular portions of the record to support this finding, but Plaintiff does not dispute it.  (Plaintiff does quibble that it is unfair to point to an absence of wasting because

such is not present in *all* cases of severe back pain, but he presents no medical evidence of atrophy or wasting to gainsay the opinion.  Pl.'s Br. at 15.)

Third, the Administrative Law Judge found that Plaintiff largely had received conservative pain treatments:

> The claimant is not currently described as a surgical candidate, nor is there any evidence he has required extended periods of hospital confinement, emergency room treatment, use of a TENS unit, participation in a pain control clinic, or other extensive or significant forms of treatment commonly prescribed for intense pain.  The claimant has no abnormalities of gait, nor are any assistive devices required. . . . At the hearing, the claimant's thoughts did not seem to wander and all questions were answered alertly and appropriately.  There is no credible evidence of regular usage of strong medication to alleviate pain that would significantly impair the claimant's ability to do basic work activities.  There was no evidence in the medical record of any significant side effects.

AR 27-28.  As noted above, Plaintiff's treating surgeon stated that nothing stronger than over-the-counter medications appeared necessary after Plaintiff's second surgery, even during occasional flare-ups.  AR 454.

That there may be other interpretations of a claimant's testimony and behavior that are reasonable does not mean that the Administrative Law Judge erred.  As long as her interpretation is reasonable and supported by substantial evidence, it is not the role of the Court to second-guess it.  *Rollins v. Massanari*, 261 F. 3d 853, 857 (9th Cir. 2001).  The underlying opinion satisfied the requirements for discounting Plaintiff's credibility.

## II.

### REJECTION OF TREATING PHYSICIAN'S OPINION

Plaintiff faults the Administrative Law Judge for improperly rejecting, as "not fully credible," AR 26, 27, the opinion of one of the treating physicians, Chirag Amin, M.D.  An Administrative Law Judge may reject opinions of treating physicians in favor of other evidence if she "makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (internal quotation omitted).

Here, after summarizing the 2004 opinion of Dr. Amin – who found Plaintiff far less capable of work than did other examiners, as discussed in the testimony of Joseph Jensen, M.D. – the Administrative Law Judge explained that Dr. Amin's view was "unpersuasive," "as it is unsupported by objective medical findings.  Indeed, Dr. Amin himself indicates that this assessment is based entirely on the claimant's subjective pain." AR 26; *see* AR 27 (rejection of Amin's similarly-based "unable to work" assessment in September 2004), 444 (medical expert's testimony).  It appears undisputed that Plaintiff's pain complaints, as reported to Dr. Amin, supplied much of the basis for the doctor's assessment.  AR 444 (ascribing limitations on Plaintiff's work abilities "to the patient's intractable low back pain with sciatica following his lumbar surgery" and his resulting need for narcotic pain medications), 445.  Plaintiff objects, however, that Dr. Amin based his view on more than just subjective complaints, in that the doctor "clearly" relied on "a number of musculoskeletal and neurological abnormalities in Plaintiff's back, a situation that required two surgeries."  Reply Br. at 3; *see* AR 445.  The Court sees some merit in both sides of this dispute, although ultimately the record and the law favor Defendant.

On the one hand, Plaintiff at least is correct that the Administrative Law Judge overstates her case in saying that Dr. Amin's opinion is based *entirely* on subjective complaints.  Among the "objective findings" listed by the doctor, AR 445, are some bulging discs – a finding based on an MRI test, AR 446-447 – and "muscle spasms noted in the quadratus lumborum and lumbar paravertebral muscle regions . . . ."  Such are

"objective medical findings," in that presumably they are not based on Plaintiff's subjective statements (unless Plaintiff is capable of affecting a muscle spasm on cue). On the other hand, any error in such an overstatement was harmless. Plainly much, and perhaps most, of Dr. Amin's assessment was based on Plaintiff's reports of pain and other subjective symptoms; and the Court already has determined that the Administrative Law Judge properly found Plaintiff's subjective reports to be less than fully credible. Accordingly, it was not error to discount Dr. Amin's assessment to the significant extent it was based on those very reports.[1]

## III.

## RESIDUAL FUNCTIONAL CAPACITY

Finally, Plaintiff argues that the Administrative Law Judge improperly assessed only a single, static  residual functional capacity (RFC), whereas the evidence shows instead that he was disabled for at least part of the subject period for longer than the minimum 12 consecutive months. Although the record may support  such a finding, it also contains substantial evidence supporting the non-disability finding. The medical expert, Dr. Jensen, testified – based on his review of the medical records generally, and "depend[ing] largely" on the records of treating surgeon Dr. Sabety and examining physician Ralph N. Steiger, M.D., *see* AR 591-92 (expert relied principally on Sabety and Steiger), 422-34 (Steiger records) – that Plaintiff had numerous significant limitations on his ability to work but nevertheless could perform a significant range of tasks consistent

---

[1]      Defendant also argues that the partial rejection of Dr. Amin's opinion was sound because it was based on the opinion of the medical expert, who in turn relied on the treating surgeon, Dr. Sabety, and examining physician Ralph N. Steiger, M.D.  *See* Def.'s Mem. at 3-4. Perhaps Defendant is correct, but the Court prefers to reject Plaintiff's argument without reference to the medical expert's testimony, for the simple reason that the challenged portion of the underlying opinion does not *expressly* rely on that testimony.  *See* AR 26 (challenged finding), 27 (summary of medical expert's testimony).

with "light" work.  AR 591-92, 594-96.  The Administrative Law Judge's RFC assessment closely tracks Dr. Jensen's view.  AR 27.

Apparently based on Dr. Jensen's testimony that Plaintiff's impairments have "been in existence since his alleged onset date of July 25, 2005" "[a]nd continue through the present time," *see* AR 592 (questions put to Jensen, answered "Yes"), Plaintiff asserts that Dr. Jensen and the Administrative Law Judge found "one constant RFC" instead of taking into account his changing symptoms.  Plaintiff is putting words into the Administrative Law Judge's mouth.  The questions put to Dr. Jensen specifically sought his view about whether Plaintiff ever met or equaled a listed impairment for 12 months. The questions focused on several discrete periods of time noted by Plaintiff, including (1) the time after his injury and before his initial surgery; (2) the period between surgeries, and (3) the period after his second surgery.  In other words, the questions did not conflate all of the post-injury time into a single period.  Dr. Jensen opined that Plaintiff did not meet the qualitative test for disability for 12 months or more; he did not necessarily believe that Plaintiff had exactly the same physical capability in every time period.  *See* AR 592-94. Plaintiff may be correct that the record could support a contrary finding, but substantial evidence supports the one that the Administrative Law Judge made.

## IV.

### CONCLUSION

For the reasons above, the decision of the Commissioner is affirmed.


DATED:  June 4, 2007


_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE